**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD SKAFF,
               *Plaintiff-Appellant,*

v.

MERIDIEN NORTH AMERICA BEVERLY
HILLS, LLC, e/s/a Le Meridien,
               *Defendant-Appellee.*

No. 06-55434

D.C. No.
CV-05-00027-R

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
April 16, 2007—Pasadena, California

Filed November 1, 2007

Before: Jerome Farris and Ronald M. Gould, Circuit Judges,
and Kevin Thomas Duffy,* District Judge.

Per Curiam Opinion;
Dissent by Judge Duffy

---

*The Honorable Kevin Thomas Duffy, Senior United States District
Judge for the Southern District of New York, sitting by designation.

14333

**COUNSEL**

Sidney J. Cohen, Sidney J. Cohen Professional Corporation, Oakland, California, for plaintiff-appellant Richard Skaff.

David E. Novitski and E. Todd Chayet, Thelen Reid & Priest LLP, Los Angeles, California, for defendant-appellee Meridien North America Beverly Hills, LLC.

**OPINION**

PER CURIAM:

We review an order of the district court denying the motion of Richard Skaff, a disabled individual, for attorneys' fees and

costs in an action he brought against a hotel pursuant to the Americans With Disabilities Act ("ADA") and California civil rights laws. Because the district court erred by concluding that it had no authority under either the ADA or California law to award fees and costs after the parties reached a settlement, we vacate the district court's order and remand the case with instructions that the district court consider the merits of Skaff's motion for fees and costs.

# I

Because the district court concluded that there was no standing based on the allegations of the complaint as filed, we recite the facts of this case as Skaff alleged them in his complaint. Skaff is a paraplegic who must use a wheelchair for mobility. Meridien North America Beverly Hills, LLC operated the Le Meridien hotel (collectively, "Le Meridien" or "hotel") in Beverly Hills, California.[1] About two weeks before a visit to Le Meridien, Skaff called the hotel and made a reservation for the night of May 9, 2004. When Skaff made his reservation, he told the Le Meridien reservation agent that he used a wheelchair and that he needed an accessible room with a roll-in shower. Skaff reiterated his need for an accessible room with a roll-in shower when he checked into Le Meridien two weeks later. However, Le Meridien assigned Skaff to a room with a bathtub. Skaff at once told the hotel staff of the problem, and, after a one-hour delay, Le Meridien provided Skaff with a room that had a roll-in shower. The roll-in shower in that room, however, did not have a wall-hung shower chair. This prevented Skaff from using the shower because Skaff cannot stand on his own. Skaff reported this problem to the hotel staff and asked if the hotel had a portable

---

[1] Le Meridien has since closed and will reopen under a new name in early 2008. *See* Le Meridien at Beverly Hills, http://www.starwoodhotels.com/lemeridien/property/overview/ announcements.html?propertyID=1907#conditions (last visited July 25, 2007).

shower chair that he could use. The staff eventually found a portable shower chair for Skaff, and he was able to take a shower the following morning.

In addition to the problems with the shower described above, paragraph 14 of Skaff's complaint alleged more generally that "during the course of his stay at the Hotel, Plaintiff encountered numerous other barriers to disabled access, including 'path of travel,' guestroom, bathroom, telephone, elevator, and signage barriers to access, all in violation of federal and state law and regulation." Additionally, paragraph 17 of Skaff's complaint asserted that "[u]ntil Defendants make the Hotel and its facilities accessible to and useable by Plaintiff, he is deterred from returning to the Hotel and its facilities."

Skaff sought injunctive relief pursuant to Title III of the ADA and injunctive relief and damages pursuant to California's state civil rights laws. Skaff also sought attorneys' fees, litigation expenses, and costs pursuant to both the ADA and California law. The parties settled all issues relating to injunctive relief and damages at a settlement conference before a magistrate judge. However, the parties did not settle the issue of attorneys' fees and costs, and, in the parties' settlement agreement, Skaff retained the option to file a motion for such fees and costs if the parties could not further settle the matter. When the parties could not reach a settlement on fees and costs, Skaff filed a motion in the district court.

The district court denied Skaff's motion for attorneys' fees and costs. In its order denying the motion, the district court made the following findings of fact. First, the district court found that "[t]he only specific denial of disabled access that Plaintiff alleged in his complaint was the Defendant's delay in providing him a room with a roll-in shower and shower chair." The district court determined that "[t]he Defendant remedied these matters within hours of Plaintiff's request." Also, the district court found that, in his complaint, Skaff "did

not complain of or identify other features of the hotel that he wanted to use but was denied access to or otherwise prevented from using." In addition, the district court noted that Le Meridien "was given neither notice of the violations, as is required by the ADA, nor the opportunity to remedy them" before Skaff sued. Finally, the district court found that "[i]n the past three years, Plaintiff has filed at least 21 lawsuits similar to the case at bar in California federal courts alone."

The district court based its denial of attorneys' fees on the following conclusions of law. First, the district court determined that, when Skaff filed his complaint, he did not have standing to pursue his claims. Because in the district court's view the only ADA or state law violations Skaff alleged in his complaint were the problems with the shower, and because Le Meridien remedied those problems promptly during Skaff's visit, the district court concluded that his complaint did not allege an "injury in fact." The district court then concluded that because Skaff lacked standing from the outset of the case, the court had no authority to award fees, notwithstanding the settlement agreement. Additionally, the district court determined that Skaff was not entitled to attorneys' fees under California state law because he did not attempt to settle his dispute with Le Meridien before filing suit, citing the California Supreme Court's decision in *Graham v. DaimlerChrysler Corp.*, 101 P.3d 140 (Cal. 2004). Skaff appeals the district court's order denying his motion for an award of attorneys' fees, litigation expenses, and costs.

## II

We review the district court's findings of fact for clear error. *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1124 (9th Cir. 1996). We review for abuse of discretion the district court's decision to deny a motion for attorneys' fees. *Labotest, Inc. v. Bonta*, 297 F.3d 892, 894 (9th Cir. 2002). A district court abuses its discretion when it denies attorneys' fees based on an inaccurate view of the law. *Entm't*

*Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1216-17 (9th Cir. 1997). We review de novo any questions of law underlying the district court's decision to deny fees, including the question of whether a party had standing to pursue its claim. *Hartman v. Summers*, 120 F.3d 157, 159 (9th Cir. 1997). The district court's interpretation and construction of the ADA and the California civil rights laws are also questions of law that we review de novo. *Soltani v. W. & So. Life Ins. Co.*, 258 F.3d 1038, 1042 (9th Cir. 2001).

# III

We begin with the unassailable premise that "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Constitutional standing has three elements. First, the plaintiff must have suffered an "injury in fact" that is concrete, particularized, and actual or imminent. Second, there must be a causal link between the injury and the conduct of which the plaintiff complains. Third, it must be likely that a favorable decision will redress the plaintiff's injury. *Id.* at 560-61. In this case, the district court concluded that Skaff did not have standing because his complaint did not allege an injury in fact.

We must follow the rule that if a plaintiff does not allege standing in its complaint, we have no jurisdiction to hear the case. *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002). A court that lacks jurisdiction at the outset of a case lacks the authority to award attorneys' fees. *Branson v. Nott*, 62 F.3d 287, 292-93 (9th Cir. 1995); *Smith v. Brady*, 972 F.2d 1095, 1097 (9th Cir. 1992); *Latch v. United States*, 842 F.2d 1031, 1033-34 (9th Cir. 1988).[2] Although the district

---

[2]Because, in the district court's view, Skaff's complaint did not adequately allege injury giving rise to his standing to sue, the district court concluded that it lacked jurisdiction from the outset of the case and thus

court correctly identified the above rule, it erred in concluding that Skaff had no standing because of his failure to allege injury.

[1] Our case law provides guidance on how to determine whether an ADA plaintiff has suffered an injury in fact sufficient to give that plaintiff standing and to give us jurisdiction. In *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138-39 (9th Cir. 2002), we held that a plaintiff has standing to challenge barriers in a public accommodation under the ADA when he has actually encountered those barriers. *Pickern* further held that a plaintiff may challenge barriers not personally encountered if those barriers have deterred the plaintiff from patronizing the public accommodation. The key problem with the district court's ruling here is that the district court was wrong in stating that Skaff had not alleged any problem other than the quickly-remedied shower deficiencies and in thus concluding that Skaff had not alleged an injury in fact. To the contrary, Skaff had explicitly alleged that he personally encountered other barriers to access, and that was sufficient to allege an injury in fact.[3]

---

did not have authority to award attorneys' fees. Ordinarily, the appropriate disposition of a motion for attorneys' fees when the court lacked jurisdiction from the outset of an action is not denial of the motion, as the district court did here, but dismissal of the motion for lack of jurisdiction. *In re Knight*, 207 F.3d 1115, 1117 (9th Cir. 2000); *Branson*, 62 F.3d at 292-93.

[3]The dissent's contention that our reasoning would allow individuals with disabilities to bring ADA claims without having even entered the building or having any knowledge of violations is simply incorrect. If Skaff's complaint had just asserted general categories of violations without attesting to Skaff's personal knowledge of or experience with those violations, then no injury in fact would have been pled under the standard established in *Pickern*. However, paragraph 14 of Skaff's complaint alleged that he personally encountered several types of access barriers during his stay at the hotel, and paragraph 17 stated that he would be deterred from returning to the hotel until those violations were corrected. Skaff's complaint therefore articulated the elements of injury required to prove Article III standing at the pleadings stage.

The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint.[4] *Lujan*, 504 U.S. at 569 n.4. Though the party invoking our jurisdiction bears the burden of establishing that party's standing, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 561. Because the district court based its conclusion that there was no standing when the initial complaint was filed on the district court's assessment of the language of the complaint,[5] we look

---

[4]Thus, the fact that Le Meridien has closed since Skaff's visit does not affect our analysis of whether Skaff pled that he had standing to pursue his claims.

[5]In its initial "Findings of Fact" numbers 1-3, the district court recited: "1. The only specific denial of disabled access that Plaintiff alleged in his complaint was the Defendant's delay in providing him a room with a roll-in shower and shower chair. 2. The Defendant remedied those matters within hours of Plaintiff's request. 3. At the time, Plaintiff did not complain of or identify other features of the hotel that he wanted to use but was denied access to or otherwise prevented from using." In its "Conclusions of Law" numbers 2-5, the district court held: "2. A party invoking federal jurisdiction bears the burden of establishing its standing to bring suit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To do so, the plaintiff must demonstrate an injury in fact that is concrete and particularized and actual or imminent as opposed to conjectural or hypothetical. *Id.* at 560-61. Standing must exist at the time the action is filed and cannot be established by showing later actions of post-filing intent. *Id.* at 569-70 n.4. 3. In light of the above findings of fact, Plaintiff suffered no injury at the hands of the Defendant that would support a claim under the ADA or state law. 4. The alleged ADA and California Civil Code violations that Plaintiff identified only after the case had progressed, his consultant had visited the site, and settlement negotiations were underway do not retroactively give rise to an injury in fact. 5. Because Plaintiff lacks standing, this Court has no authority to award attorneys' fees. *Smith v. Brady*, 972 F.2d 1095, 1097 (9th Cir. 1992); *Latch v. United States*, 842 F.2d 1031, 1033-34 (9th Cir. 1988)."

Thus it is clear beyond doubt from the district court's reasoning in its decision that the district court did not think the complaint alleged any "specific denial of disabled access" beyond the shower problem, which was remedied, and that standing had to be determined as of the time of the complaint. However, as noted above, the complaint did allege generally

to Skaff's complaint to determine whether he had standing, accepting as true all of the complaint's material allegations. *See Bernhardt*, 279 F.3d at 867.[6]

**[2]** Federal Rule of Civil Procedure 8(a)(1)-(2) requires only that a complaint contain "a short and plain statement of the grounds upon which the court's jurisdiction depends" and "a short and plain statement of the claim showing that the pleader is entitled to relief." When enacted, Rule 8 eliminated the archaic system of fact pleading found in the state codes of pleading applied by the federal courts under the 1872 Conformity Act. Today, "[t]he only function left to be performed by the pleadings alone is that of notice." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1202, at 89 (3d ed. 2004); *see Erickson v. Pardus*, 127 S. Ct. 2197,

---

that plaintiff had encountered various obstacles to his access, and whether those general allegations are sufficient to show injury for standing purposes takes our analysis, we think inescapably, to an assessment of the requirements of notice pleading under Federal Rule of Civil Procedure 8. Hence we disagree with our dissenting colleague who argues that this case has nothing to do with pleading, and instead analyzes the record in terms of the summary judgment standard. An analysis of these proceedings from the standpoint of summary judgment is not, in our view, supported by the record, for the district court's findings of fact and conclusions of law show no suggestion that the court was making a decision on the merits by application of the summary judgment standard. To the contrary the district court lucidly, though we conclude incorrectly, explained its view that no injury had been pleaded in the complaint beyond the shower problem that was promptly remedied.

[6]The dissent argues that the rule of Bernhardt is inapplicable because the parties engaged in some informal discovery, and the district court reviewed the file *in camera*. The dissent argues that the district court's ruling that there was no standing and hence no jurisdiction over the attorney's fees issue is "akin to a motion for summary judgment rather than a motion to dismiss." However, as we explain herein, our reading of the district court's decision shows that the district court was making an assessment of standing based on the allegations of the complaint, and this inescapably raises the issue of whether the complaint was pleaded adequately to show injury.

2200 (2007). Rule 8's concluding admonishment that "[a]ll pleadings shall be so construed as to do substantial justice" confirms the liberality with which we should judge whether a complaint gives the defendant sufficient notice of the court's jurisdiction. Fed. R. Civ. P. 8(f).

Le Meridien argues, and the district court agreed, that the only denial of access that Skaff alleged in his complaint was Le Meridien's delay in providing him with a roll-in shower and shower chair. Because Le Meridien remedied these problems during Skaff's visit, Le Meridien maintains, and the district court agreed, that Skaff had not suffered an injury in fact at the time he filed his complaint.

**[3]** We agree that the initial mistake in assigning a room to Skaff with a bathtub rather than a roll-in shower caused no cognizable damage because it was immediately corrected by reassignment to a room with a roll-in shower as had been requested. Similarly, the initial absence of a shower chair was promptly corrected, and Skaff had a chair he could use in the roll-in shower by the next morning. Skaff suffered no cognizable injury concerning the shower because Le Meridien promptly corrected its errors. The ancient maxims of *de minimis non curat lex* and *lex non curat de minimis* teach that the law cares not about trifles. 1 Alexander M. Burrill, *A New Law Dictionary and Glossary* 334 (Lawbook Exchange, Ltd. 1998) (1st ed. 1850) (reciting the maxim of *de minimis non curat lex*, translated as "[t]he law does not care for, or take notice of trifling matters"); 2 Stewart Rapalje & Robert L. Lawrence, *A Dictionary of American and English Law* 751 (Lawbook Exchange, Ltd. 1997) (1888) (reciting the maxim of *lex non curat de minimis*, translated as "[t]he law cares not about trifles"); *see Jewell v. Parr*, (1853) 13 C.B. 909, 916, 138 Eng. Rep. 1460, 1463 (C.P.) ("Applying the maxim de minimis non curat lex, when we say that there is no evidence to go to a jury, we do not mean that there is literally none, but that there is none which ought reasonably to satisfy a jury that the fact sought to be proved is established."); *Baxter v.*

*Faulam*, (1746) 1 Wils. K.B. 129, 129, 95 Eng. Rep. 532, 532 (K.B.) (holding that an apprentice was not required to pay taxes on his salary of six pence, noting that "this case falls under the saying of de minimis non curat lex"); *Bright v. Smith*, (1704) 2 Freeman 279, 280, 22 Eng. Rep. 1210, 1210 (Ch.); *Wats v. Dix*, (1649) 82 Eng. Rep. 647, 647 (K.B.) (discussing counsel's argument that a lease made at the direction of a deed in trust was valid because the lease varied only slightly from the direction in the deed, and "de minimis non curat lex"); *see also Black's Law Dictionary* 464 (8th ed. 2004) (reciting the maxim of *de minimis non curat lex*, translated as "[t]he law does not concern itself with trifles"). This principle frequently has been followed by the Supreme Court. *E.g.*, *Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 231 (1992) (stating that "the venerable maxim *de minimis non curat lex* ('the law cares not for trifles') is part of the established background of legal principles against which all enactments are adopted, and which all enactments (absent contrary indication) are deemed to accept," collecting cases); *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 618 (1992). The mere delay during correction of the problem with the shower is too trifling of an injury to support constitutional standing.

**[4]** However, we hold that, in paragraphs 14 and 17 of his complaint, Skaff pled injuries that gave him standing to pursue this case.[7] Paragraph 14 discusses Skaff's encounters with accessibility barriers, other than the barrier of the inaccessible showers, at Le Meridien:

---

[7]The dissent's use of an equation drawn from "mathematical logic" adds nothing to the analysis, because it relies on the conclusion that the only injury Skaff suffered was the lack of an accessible shower, an injury discounted to 0 because it was so promptly remedied. This formulation simply ignores the allegations in paragraphs 14 and 17 of Skaff's complaint, which, while sparse, were adequate to establish injury in fact under the liberal parameters of notice pleading.

> During the course of his stay at the Hotel, Plaintiff
> encountered numerous other barriers to disabled
> access, including "path of travel," guestroom, bath-
> room, telephone, elevator, and signage barriers to
> access, all in violation of federal and state law and
> regulation[.] The facilities should be brought into
> compliance with all applicable code requirements.

The record does not show that at the time Skaff filed his suit,
Le Meridien had remedied any of the violations Skaff alleged
that he encountered during his visit and identified in para-
graph 14. Skaff's allegations that he encountered the above
barriers, though succinct, gave Le Meridien notice of what
Skaff's claims were and that he had personally encountered
barriers and thus had standing to pursue their elimination.

In paragraph 17, Skaff alleged: "Until Defendants make the
Hotel and its facilities accessible to and useable by Plaintiff,
he is deterred from returning to the Hotel and its facilities."
This allegation of deterrence was also sufficient to give Le
Meridien notice of Skaff's standing to challenge the barriers
under *Pickern*.

**[5]** In light of the allegations of paragraph 14, the district
court committed clear error in finding that (1) the only denial
of disabled access Skaff alleged in his complaint was the
delay in providing him a room with an accessible shower and
shower chair and (2) at the time Skaff filed his complaint, he
did not complain of or identify other features of the hotel that
he wanted to use but to which he was denied access. As a
matter of law, the allegations in paragraph 14 that Skaff
encountered barriers to access, and the allegation in paragraph
17 that Skaff was deterred by accessibility barriers from visit-
ing Le Meridien, gave Le Meridien notice of the injury Skaff
suffered and, at the pleading stage, established Skaff's stand-
ing to sue for violations of the ADA.

In view of our colleague's dissent, it may be useful to
explain our view of where and how we part company.

Although the district court said it would review the whole file before ruling on the motion for attorneys' fees, we view the district court's reasoning in its findings of fact and conclusions of law, as set out in pertinent part in footnote 5, to amount to a holding that the initial complaint as pleaded did not sufficiently allege injury, beyond the shower incident that was promptly remedied. The district court wholly ignored paragraphs 14 and 17 of the complaint, to which we attach some significance. Although our dissenting colleague feels that the informal discovery and the court's review of the file warrant assessing this case under a summary judgment standard, nowhere in the district court's clear findings of fact and conclusions of law does the court state, or even hint, that it is applying a summary judgment standard. Accordingly, we respectfully but unequivocally disagree with our colleague's argument that a summary judgment standard is applicable and that the allegations of the complaint should not be viewed as true for purposes of our review.

In spite of the minimal hurdle of notice imposed by Rule 8, Le Meridien contends that Skaff pled no constitutional injury because he did not allege the existence of specific accessibility barriers with sufficient detail. Le Meridien maintains that Skaff inadequately pled his standing because "[t]here is no evidence in the record that Plaintiff encountered any of [the] barriers" he identified in his complaint. Le Meridien essentially urges us to require ADA plaintiffs to plead the existence of accessibility barriers in specific detail and to support such pleadings with evidence that the plaintiff encountered those barriers.

Le Meridien's argument ignores the purpose of a complaint under Rule 8—to give the defendant fair notice of the factual basis of the claim and of the basis for the court's jurisdiction. "Specific facts are not necessary . . . ." *Erickson*, 127 S. Ct. at 2200. Le Meridien would essentially impose a heightened pleading standard upon ADA plaintiffs, even though the Supreme Court has repeatedly instructed us not to impose

such heightened standards in the absence of an explicit requirement in a statute or federal rule. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (rejecting heightened pleading standard for Title VII employment discrimination suits); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) (rejecting heightened pleading standard for § 1983 suits asserting municipal liability); *see Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1973 n.14 (2007); *cf.* Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, § 101(b), 109 Stat. 737, 747 (imposing heightened pleading standard for securities fraud class actions) (codified at 15 U.S.C. § 78u-4(b)(1)-(2)); Fed. R. Civ. P. 9(b) (imposing heightened pleading standard for complaints of fraud or mistake).

Though the jurisdictional allegations in Skaff's complaint were succinct, concerns about specificity in a complaint are normally handled by the array of discovery devices available to the defendant. In fact, Le Meridien used some of those devices in this case. Le Meridien attempted to elicit the basis for paragraph 14 with contention interrogatories pursuant to Federal Rule of Civil Procedure 33, requiring Skaff to detail the barriers he personally encountered. Although Le Meridien complains that Skaff's interrogatory answers only referred to the same general allegations in the complaint, Le Meridien did not move to compel more complete answers. Le Meridien could have asked Skaff formally what barriers he had encountered, where they were in the hotel, when he encountered them, what he did about it, whether any person was present when he encountered the barriers, and, for each barrier, what damages he claimed to have suffered. If Le Meridien believed that Skaff gave conclusory answers to interrogatories on this score, Le Meridien was free to move to compel more complete answers pursuant to Rule 37 in light of what is relevant during discovery under Rule 26.[8] Le Meridien also had the

---

[8]In response to Le Meridien's interrogatory asking Skaff to "[s]pecifically identify every barrier to disabled access [he] encountered

option of taking Skaff's deposition pursuant to Rule 27 and inquiring on such points, testing his credibility with cross-examination. Le Meridien could also have sent requests for admission, pursuant to Rule 36, asking, for example, for conclusive admissions that Skaff had not encountered barriers not identified by him in interrogatories or deposition. In any event, when notice of a claim is given that satisfies Rule 8, concerns about specificity in a complaint are properly addressed through discovery devices under Rules 26, 27, 33, and 36, and, if applicable, the pre-trial order entered pursuant to Rule 16. Le Meridien did not use available discovery and procedural tools that could have compelled specificity. Accordingly, we conclude that there is no sound basis on which to override our normal standing and notice pleading requirements in a quest for more specificity.[9] The district court thus erred in concluding that Skaff's complaint did not allege Skaff's standing to pursue his claims.[10]

during [his] stay at the hotel," Skaff identified the lack of a wall-hung shower chair in the room with a roll-in shower, the lobby bar, the room thermostat, the room doors, the room closet (including its clothes racks, its raised floor, and the location of the iron), the guest room's bathroom (including its toilet grab bar and towel racks), the public men's restroom, the pay phones in the hotel lobby, the elevator's control buttons, and the building directory. Skaff also supplied an email he sent Le Meridien less than one week after his visit. In the email, Skaff provided a detailed account of his visit to the hotel.

[9]If it develops that discovery shows that a party did not have a good-faith basis for the general factual allegations made in a complaint, then that party will be subject to sanctions under the normal standards. *See Molski v. Evergreen Dynasty Corp.*, No. 05-56452, 2007 WL 2458547 at *14 and n.8 (9th Cir. Aug. 31, 2007) (per curiam). Moreover, if there is a persistent pattern of unfounded allegations, in an appropriate case a litigant or his or her counsel may be subjected to the rigors of a pre-filing order. *See id.*

[10]In reaching the conclusion that the allegations of the complaint were sufficient to show Skaff's injury and standing, we express no opinion on whether Skaff was entitled to an award of attorneys' fees. We hold only that because Skaff had standing, the district court should have considered his motion for attorneys' fees on the merits. We need not decide whether

**IV**

**[6]** In addition to concluding that Skaff could not seek attorneys' fees under the ADA or California law because he lacked standing, the district court also held that Skaff could not seek attorneys' fees under California law because he did not attempt to settle his dispute with Le Meridien prior to filing suit. Section 1021.5 of the California Code of Civil Procedure permits an award of attorneys' fees to a "successful party" in an "action which has resulted in the enforcement of an important right affecting the public interest."

The district court cited the California Supreme Court's decision in *Graham v. DaimlerChrysler Corp.*, 101 P.3d 140 (Cal. 2004), for the proposition that California law required Skaff to attempt settlement before filing suit in order to recover attorneys' fees pursuant to section 1021.5. *Graham* was a case in which the plaintiff sought attorneys' fees pursuant to section 1021.5 under the "catalyst" theory. The catalyst theory defines who is a "successful party" in cases in which "litigation does not result in a judicial resolution."[11] *Id.* at 144.

---

an award of fees in any particular amount would have been unjust under the circumstances of the case, or whether it would have been an abuse of discretion for the district court to deny fees in their entirety or to limit fees to an amount substantially less than those claimed. Those issues are only properly reached after the district court, with cognizance of standing, has made a ruling on attorneys' fees.

[11]Under the catalyst theory, a party is "successful," even if the litigation does not result in a judicially-sanctioned change in the parties' legal relationship, when the defendant voluntarily changes its behavior because of, and in the manner sought by, the litigation. *Graham*, 101 P.3d at 144.

In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 600 (2001), the United States Supreme Court rejected the catalyst theory as a means to recover fees as a "prevailing party" under the ADA and other federal fee-shifting statutes. *See* 42 U.S.C. § 12205 (ADA fee-shifting provision, providing that the court "may allow the prevailing party, other than the United

However, because Skaff's litigation resulted in a judicial reso-
lution, the catalyst theory does not apply in this case. Specifi-
cally, the district court dismissed Skaff's case and explicitly
retained jurisdiction to enforce the settlement agreement.

**[7]** Because Skaff did not need to satisfy the conditions set
forth in *Graham*, we conclude that he was a "successful
party" in this case. The California Supreme Court has "taken
a broad, pragmatic view of what constitutes a 'successful
party.' " *Id.* at 147; *see also County of Colusa v. Cal. Wildlife
Conservation Bd.*, 145 Cal. App. 4th 637, 649 (2006). The
court defines the term "successful party" in section 1021.5 to
mean "the party to the litigation that achieves its objectives."
*Graham*, 101 P.3d at 151. Under California law, "[i]t is undis-
puted that relief obtained through a settlement may qualify a
plaintiff as the prevailing party." *Lyons v. Chinese Hosp.
Ass'n*, 136 Cal. App. 4th 1331, 1345 (2006).

**[8]** Skaff's litigation achieved its objective of obtaining
injunctive relief to make Le Meridien accessible. Pursuant to
the settlement agreement, Le Meridien agreed to remedy
sixty-three of the sixty-nine instances of noncompliance with

---

States, a reasonable attorney's fee, including litigation expenses[ ] and
costs").

In *Graham*, the California Supreme Court endorsed the catalyst theory
as a means for a plaintiff to show that it was a "successful party" under
section 1021.5, but imposed two additional requirements on plaintiffs
seeking fees under the catalyst theory. First, the plaintiff's suit must have
had some merit, and, second, the plaintiff must have engaged in a reason-
able attempt to settle the dispute before filing litigation. *Graham*, 101 P.3d
at 144; *see also Tipton-Whittingham v. City of Los Angeles*, 101 P.3d 174,
177 (Cal. 2004) ("In order to obtain attorney fees without . . . a judicially
recognized change in the legal relationship between the parties, a plaintiff
must establish that (1) the lawsuit was a catalyst motivating the defendants
to provide the primary relief sought; (2) that the lawsuit had merit and
achieved its catalytic effect by threat of victory, not by dint of nuisance
and threat of expense, as elaborated in *Graham*; and, (3) that the plaintiffs
reasonably attempted to settle the litigation prior to filing the lawsuit.").

federal and state accessibility laws that had been identified by the consultant hired by Skaff. Skaff also obtained $15,000 in damages through the settlement agreement. The settlement agreement and the district court's order dismissing the case provided that the district court would retain jurisdiction to enforce the agreement. The judicially-sanctioned and court-enforceable settlement agreement in this case renders Skaff a "successful party."[12] Because Skaff did not make use of the catalyst theory, California law did not require him to make a reasonable attempt to settle before filing suit. The district court erred in concluding that Skaff was not entitled to attorneys' fees under California law because he did not attempt a pre-suit settlement.

## V

In its order denying Skaff's motion for attorneys' fees, the district court also stated that the ADA required Skaff to give Le Meridien notice of the violations he intended to challenge in his lawsuit, and that Skaff never gave such notice. Although the district court's order did not explicitly indicate the significance of the fact that Skaff did not give pre-suit notice, the district court, which made a factual finding on the lack of pre-suit notice, apparently viewed pre-suit notice as a prerequisite to recovering attorneys' fees under the ADA. *Cf. Doran v. Del Taco, Inc.*, 373 F. Supp. 2d 1028, 1033 (C.D. Cal. 2005) (requiring, in ADA cases, a pre-suit warning to the defendant and a reasonable opportunity to cure the violation as a prerequisite to the plaintiff's recovery of attorneys' fees),

---

[12]Skaff is also a prevailing party under the ADA pursuant to *Buckhannon*, which held that "court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Buckhannon*, 532 U.S. at 604 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)). Likewise, in *Barrios v. California Interscholastic Federation*, 277 F.3d 1128, 1134 (9th Cir. 2002), we held that "[u]nder applicable Ninth Circuit law, a plaintiff 'prevails' when he or she enters into a legally enforceable settlement agreement against the defendant."

*vacated and remanded*, No. 05-55942, 2007 WL 1492921 (9th Cir. May 21, 2007). For the reasons that follow, however, we hold that the ADA contains no such notice requirement, and we decline to imply one.

**[9]** The text of the ADA contains no pre-suit notice requirement. If Congress believes it is preferable as a matter of policy to require plaintiffs to give notice to defendants before filing an ADA suit, it is free to amend the Act. Congress must surely be aware of the arguments in favor of a pre-suit notice requirement, as bills requiring notification have been introduced with no success in the last four Congresses. *See* H.R. 2804, 109th Cong. (2005); H.R. 728, 108th Cong. (2003); H.R. 914, 107th Cong. (2001); S. 782, 107th Cong. (2001); H.R. 3590, 106th Cong. (2000); S. 3122, 106th Cong. (2000); *see also* Samuel R. Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 U.C.L.A. L. Rev. 1, 16-20 (2006) (discussing and critiquing the political movement in favor of amending the ADA to include a notice requirement). Unless and until Congress sees fit to engraft a notice requirement onto the ADA, we apply the ADA as written without a pre-filing notice requirement.

**[10]** Our analogous precedent also buttresses the conclusion that ADA plaintiffs are not required to provide pre-suit notice to defendants. In *Botosan v. Paul McNally Realty*, 216 F.3d 827, 830 (9th Cir. 2000), we considered whether a plaintiff was required to notify the state or local agency charged with enforcing the applicable state civil rights laws prior to filing a private lawsuit under Title III of the ADA. The defendants, arguing in favor of a pre-suit notice requirement, suggested that the pre-suit notice requirement explicitly provided for in Title VII of the Civil Rights Act of 1964 should apply to suits under the ADA. *Id.* at 831. Rejecting the defendants' argument, we instead held that the language of 42 U.S.C. § 12188(a)(1), the provision of the ADA that provides a private right of action, was clear and unambiguous and contained no pre-suit notice requirement. *Id.* at 832. We noted that while

§ 12188(a)(1) makes no reference to Title VII's pre-suit notice requirement, 42 U.S.C. § 2000a-3(c), § 12188(a)(1) does make reference to 42 U.S.C. § 2000a-3(a), the section of Title VII that defines the relief available to a private plaintiff. *Botosan*, 216 F.3d at 832. We reasoned that, in light of the ADA's reference to § 2000a-3(a), if Congress had intended to impose a pre-suit notice requirement on ADA plaintiffs, it would have explicitly imposed such a requirement or would have made explicit reference to Title VII's pre-suit notice provision. *Id.* Thus, we held that "[a] plaintiff in a private Title III action is not required to provide notice to any state or local agency as a prerequisite to filing suit." *Id. Botosan* is instructive, and we hold that the ADA does not require, either explicitly or by reference to another statute, that a plaintiff give notice of intention to sue before filing suit as a prerequisite to the recovery of attorneys' fees and costs.[13]

---

[13]District courts that have engrafted a pre-suit notice requirement onto the ADA have been motivated by concerns that some plaintiffs' lawyers have abused the ADA to obtain "shake down" settlements. In *Del Taco*, 373 F. Supp. 2d at 1033, the district court wrote that "unscrupulous law firm[s]" had "distorted" the ADA into a "cynical money-making scheme" for themselves and the plaintiffs they represent:

> The scheme is simple: An unscrupulous law firm sends a disabled individual to as many businesses as possible in order to have him or her aggressively seek out all violations of the ADA. Then, rather than simply informing a business of the violations and attempting to remedy the matter through conciliation and voluntary compliance, a lawsuit is filed, requesting damage awards that could put many of the targeted establishments out of business. Faced with costly litigation and a potentially drastic judgment against them, most businesses quickly settle.

*Id.* at 1030 (internal quotation marks and citation omitted); *see also Rodriguez v. Investco, L.L.C.*, 305 F. Supp. 2d 1278, 1282 (M.D. Fla. 2004) ("The current ADA lawsuit binge is . . . essentially driven by economics —that is, the economics of attorney's fees.").

However, a district court faced with litigation in which a plaintiff and his attorneys are "requesting damage awards that could put . . . the targeted establishments out of business," *Del Taco*, 373 F. Supp. 2d at 1030,

## VI

**[11]** In summary, we hold that Skaff adequately pled that he had standing to pursue his suit against Le Meridien. We also hold that California law did not in this case require Skaff to make a pre-suit attempt to settle in order to seek attorneys' fees under section 1021.5 of the California Code of Civil Procedure. Finally, we hold that the ADA requires neither that plaintiffs give defendants pre-suit notice that they intend to sue, nor that plaintiffs give defendants an opportunity to cure the alleged violation or violations before filing suit as a prerequisite to recovering attorneys' fees. The district court erred when it denied Skaff's motion for attorneys' fees and costs on the above grounds. The district court should have considered Skaff's motion for attorneys' fees and costs on the merits. The district court had discretion whether to award fees to Skaff as a prevailing party. We will review a future determination awarding or rejecting any fees or costs for abuse of discretion. We vacate the order of the district court denying Skaff's motion, and we remand the case so that the district court can consider the merits of Skaff's motion. Each party shall bear its own costs.

**VACATED AND REMANDED.**

---

has at its disposal appropriate tools to protect its own and the public's interest, in that if allegations are unfounded, sanctions can be awarded or pre-filing orders can be imposed. *See Molski*, op. at 37 n.7. Conversely, if damage allegations are founded on true facts, then a party should not be faulted for seeking damages and the attorneys' fees the ADA expressly permits the party to pursue.

Congress and the state legislatures have available means to study if there is litigation abuse and to consider whether the law should be modified. Congress has provided us with supplemental jurisdiction over state law claims that are part of the same case as ADA claims. *See* 28 U.S.C. § 1367(a). If Congress concludes that the damages available under state law are creating abuse in the federal courts, it can limit the remedies available.

DUFFY, District Judge, dissenting:

I respectfully dissent.

The question posed by this case before the court does not involve interpretations of the canons of construction for pleadings. The discussion of the required contents of pleadings in ADA cases in the majority opinion is mere dicta—but, like most dicta, it can be interpreted to obtain a result far from the intent of its author.[1]

The majority cites *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) for the proposition that we must accept as true all of the complaint's material allegations. However, a review of the well-developed record indicates that the parties conducted what appears to be a full mutual discovery of the facts, and that the case was dismissed by the district court in response to an application for attorneys' fees after a settlement had been reached. In *Bernhardt*, discovery had yet to be completed; the merits had yet to be disposed of. Unlike here, in *Bernhardt* the district court was forced to limit its inquiry regarding the presence of standing to the four corners of the complaint.

In this case, the scope of the district court's probe was not so limited. During the scheduled hearing on the motion for attorney's fees, the district court ordered that Skaff submit his entire case file to the court for an in camera review. In its Order Denying Plaintiff's Motion for An Award of Attorney's Fees (the "Order"), the court stated that it came to its conclusion "[a]fter considering all the papers filed in connection

---

[1]Under the reasoning of the majority opinion, any person with a claimed disability can bring an action against a building for ADA violations without having even entered the building or having any knowledge of violations. The plaintiff merely could plead the violations by categories already recognized in ADA cases in the hope that an "expert" could identify some violations during discovery.

with the motion, oral argument from counsel, and all matters presented . . . ." The court specifically referred to post-complaint activity: "Plaintiff did not identify any specific violations of the Americans with Disabilities Act [the "ADA"] or California Civil Code until after (1) the case had progressed; (2) his lawyer's consultant had thoroughly inspected the hotel and charged a fee of over $10,000.00 for doing so; and (3) settlement negotiations were underway." Order at ¶ 4. Because this case progressed well beyond the pleading stage prior to settlement and the district court relied on subsequently discovered facts in coming to its conclusion, we were not required to assume the veracity of all statements contained in the complaint. *See, e.g.*, *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 579 n.6 (D.C. Cir. 1980) ("Because the [ ] suit was dismissed with prejudice pursuant to a settlement, we do not assume that the facts alleged in the [ ] complaint are true.").

The majority misses the mark by solely looking to the complaint to determine whether standing existed and "accept[ing] as true all of the complaint's material allegations." Opinion at 14343. Regardless of my differing opinion from the majority, whether the general language of paragraph 14 of the complaint established an injury for the purposes of constitutional standing is completely irrelevant to this case. Neither party made a motion addressed to the pleadings or for summary judgment, but the presence of a developed record suggests that the dismissal was more akin to a motion for summary judgment rather than a motion to dismiss. Looking at the record as a whole, it can be said with certainty that the general allegations made in the complaint could not be substantiated by Skaff. "Although at the pleading stage general factual allegations of injury resulting from the defendant's conduct may suffice to establish standing, at the summary judgment stage they are not." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Hubbard v. 7-Eleven*, 433 F. Supp. 2d at 1134, 1141 (S.D. Cal. 2006).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the party invoking federal jurisdiction, it is the plaintiff who bears the burden of proof and persuasion as to the existence of standing. *Lujan*, 504 U.S. at 561; *Hubbard*, 433 F. Supp. 2d at 561. Skaff has fallen far short of meeting his burden. The majority suggests that because in its opinion the "district court's findings of facts and conclusions of law show no suggestion that the court was making a decision on the merits by application of the summary judgment standard," Opinion at 14342, n.5, our hands are tied and that we, too, must disregard the record in this case. Even if the district court did so err, the majority's opinion perpetuates this mistake. This court has an independent obligation to determine whether we have jurisdiction, and whether the district court had jurisdiction below. *Latch v. United States*, 842 F.2d 1031 (9th Cir. 1988) (citing *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986)) (holding that courts have an "obligation to 'satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review[.]' ").[2]

Just as the outcome of this case does not turn on the niceties of pleading, nor does it involve the rights of a disabled person suing for injury sustained because of violations of the ADA. The case before us was settled by the parties. The plaintiff received $15,000, and the defendant agreed to correct some conditions pointed to by plaintiff's expert as being vio-

---

[2]In its Order Denying Plaintiff's Motion for Attorney's Fees, the district court correctly referred to *Smith v. Brady*, 972 F.2d 1095, 1097 (9th Cir. 1992) and *Latch v. United States*, 842 F.2d 1031, 1033-34 (9th Cir. 1988) in holding that a court does not even have the authority to award attorneys' fees to a plaintiff who lacked standing. The *Smith* and *Latch* courts held this to be so even when, as here, the case has been effectively closed by virtue of a settlement.

lative of the ADA. The settlement agreement closed out all issues, save whether the plaintiff's counsel was entitled to attorney's fees from the defendant and, if so, the appropriate amount. Neither the district court nor this court has been called to rule upon the fairness or the wisdom of the settlement agreement.

This case does, however, involve the right of an attorney to be paid $118,000 in "attorney's fees" in connection with the institution and conduct of the instant case, particularly in light of the fairly nominal result. Even if we were to assume that the sum was reasonable, we must still determine whether the district court properly held that Skaff lacked standing at the outset of the case, taking into account all information available to it at the time it rendered its decision. The parties knew the facts involved and conveyed them to the district judge, who made specific factual findings when he rendered his decision. My review of the record indicates that the facts are as follows:

Skaff, a disabled person who requires the use of a wheelchair and has filed over twenty lawsuits pursuant to the ADA and related California laws in the federal court system in California, alleges that he visited Le Meridien on May 9, 2004 and was delayed in taking a shower because he was given a room without a roll-in shower or a wall-hung shower chair. He concedes that after complaining to hotel staff he was accommodated that evening and took a shower the following morning. After Skaff checked out of the hotel, he again voiced his dissatisfaction to hotel staff about his experience with the shower via e-mail, and provided vague, unsubstantiated allegations of various other barriers throughout the hotel.[3]

Skaff filed his complaint on January 13, 2005, and there

_____

[3]In this e-mail dated May 15, 2004, Appellant noted that there were "[n]umerous other state and federal access code/regulatory violations," but that he would not "go into detail here."

was no shortage of detail regarding his claims pertaining to his lack of access to the roll-in shower and chair. However, with respect to the multitude of other barriers that Skaff allegedly encountered throughout the course of his stay, his account is limited to the skeletal, boilerplate paragraph 14: "[d]uring the course of his stay at the Hotel, Plaintiff encountered numerous other barriers to disabled persons, including 'path of travel,' and guest room, bathroom, telephone, elevator, and signage barriers to access, all in violation of federal and state law and regulation." Skaff's amorphous allegations did not give details as to how these supposed violations affected him or any specific hotel feature to which he was denied access, or how their removal was "readily achievable" as required by the ADA. 42 U.S.C. §§ 12181(9), 12182(b)(2).

After Skaff filed the complaint, Le Meridien attempted to procure as much information regarding the allegations as possible through discovery. Skaff, strategically it seems, refused to identify or provide specifics as to the barriers at the hotel, which prompted Le Meridien to serve Skaff with interrogatories. Skaff's responses again were vague and did not identify any specific violations of the ADA or similar California statutes.[4] Le Meridien attempted to commence settlement discussions in April of 2005, but Skaff refused to do so until Le Meridien consented to an inspection of the hotel by his consultant. Le Meridien conceded, and the consultant identified 69 items he believed to be in violation of ADA guidelines or California state regulations, most of which were in rooms that had not been occupied by Skaff or even alluded to in his complaint or interrogatory responses. Skaff never amended the complaint to reflect the alleged violations identified by his

---

[4]With respect to these additional barriers, Skaff's interrogatory responses state: "Plaintiff identifies the following: lobby bar, room thermostat, room doors, room closet (clothes racks, raised floor, iron), guest bathroom (grab bar dimensions and distance, towel racks), public men's room, lobby pay phones, elevator (control buttons), and building directory."

consultant or to provide any greater details regarding his initial allegations. The parties reached their settlement in October of 2005.[5]

When Appellant first went to the offices of his attorney to discuss his case, the starting point of the litigation clearly involved solely questions of the roll-in shower and fixed shower seat. We know from the majority opinion that, in the circumstances of this case, such a delay in providing these items does not give rise to an "injury" sufficient to give plaintiff standing to start a lawsuit. As an officer of the court, the plaintiff's attorney should have told plaintiff that he lacked the requisite injury and standing to maintain this action.[6] To the contrary, counsel drafted a complaint with no want for detail regarding the specifics of the shower incident in addition to inserting a boilerplate recitation of categories in which other violations might have existed. The plaintiff conveniently refused to answer interrogatories as to the particulars of the violations in such categories until after counsel was able to obtain an expert's opinion as to possible violations and his counsel had built up a considerable amount of attorney's fees, but even these did not form the basis for any assertion of injury by Skaff. Appellant, in his mere recitation of categories of potential injuries, has not shown us that there were any bar-

---

[5]Despite the efforts taken by Le Meridien to procure information from Skaff, the majority faults the hotel for its failure to move to compel more complete answers or to "ask[ ] Skaff formally what barriers he had encountered, where they were in the hotel, when he encountered them, what he did about it, whether any person was present when he encountered the barriers, and, for each barrier, what damages he claimed to have suffered." Opinion at 14348. The majority's insistence that Le Meridien have used "available discovery and procedural tools that could have compelled specificity" ignores the facts that: (1) it was not Meridien's burden to establish jurisdiction; (2) the attorneys' fees required to implement such "procedural tools" would potentially have had to be paid by Le Meridien alone; and (3) regardless of the merits, it was in Le Meridien's interest to settle the claim as early as possible to avoid additional litigation costs.

[6]See Molski v. Evergreen Dynasty Corp., No. 05-56452, 2007 WL 2458547 at * 13 (9th Cir. Aug. 31, 2007).

riers to access that he either personally encountered or specifically knew about such that he would have been deterred from visiting Le Meridien in the future.

A plaintiff's standing to sue is an indispensable Constitutional requirement; "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). To establish standing, Appellant must demonstrate that: (i) he suffered an injury in fact; (ii) the injury in question is traceable to the Appellee's challenged conduct; and (iii) the injury can be redressed by a favorable outcome. *Lujan*, 504 U.S. at 561. Standing is determined at the time of the lawsuit's commencement, and we must consider the facts as they existed at that time the complaint was filed, with the effect of subsequent events generally analyzed under mootness principles. *Id*. at 569 n.4.[7] The elements of standing are not mere pleading requirements, but rather must be supported by sufficient evidence. *Piney Run Preservation Ass'n v. County Com'rs of Carroll County, MD*, 268 F.3d 255, 252 (4th Cir. 2001).

To establish that the plaintiff suffered an injury in fact, it must be "concrete and particularized," which requires that "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 561 n.1. The majority agrees that a slight delay in being able to procure a room with a roll-in shower and hanging chair, remedied the same night and months before Skaff filed the complaint, is not a concrete injury. Upon review of the record, with regards to the additional assertions in the complaint, it is evident that: (1) the complaint contained mere categories of potential ADA viola-

---

[7]The majority states that "[a]t the time Skaff filed his suit, Le Meridien had not remedied any of the violations Skaff alleged that he encountered during his visit and identified in paragraph 14." Based on the sparse language of paragraph 14 and the plaintiff's refusal to give specifics about these categories until after his consultant had filed the report, it remains a mystery to me how this conclusion was reached.

tions; (2) Skaff was only able to provide details to these alleged barriers to access after his expert inspected the premises and identified certain possible ADA violations, many of which were in rooms or areas of the hotel to which Skaff never ventured; (3) there are no statements in the appellate or district court record, by affidavit or otherwise, of Skaff or his attorneys that Skaff personally encountered or knew about any of the barriers that were identified by his expert during inspection of the premises.[8]

Taking these factors into account, it is evident to me that Skaff lacked standing at the time the complaint was filed. To make more clear my point, I will borrow from symbolic syllogisms used in mathematical logic. Let us assume that "$A + B \rightarrow C$" is used to represent the Rule of Law in ADA cases, and A is an annoyed disabled person; B is injury; and C is the right to redress the violations which gave rise to the injury.

The majority would seek to change this syllogism by including in C the right to redress the violations which gave rise to the injury and other incidental violations discovered before entry of judgment. This case, however, is not the appropriate one in which to announce such a sweeping change, for here, B is no injury, which is recognized by the majority as it states that "Skaff suffered no cognizable injury concerning the shower because Le Meridien promptly cor-

---

[8]The affidavit of Skaff's attorney merely incorporates the boilerplate language of paragraph 14: "During the course of his stay at the Hotel, Plaintiff encountered numerous barriers to disabled access, including 'path of travel,' guestroom, bathroom, telephone, elevator, and signage barriers to access, all in violation of federal and state law and regulation." Declaration of Sidney J. Cohen in Support of Plaintiff's Motion at ¶ 7. In Skaff's declaration, he claims that he had a telephone conversation with one of Le Meridien's employees whereby he "identified a multitude of barriers to access to the Hotel" prior to filing the complaint. Declaration of Richard Skaff at ¶ 6. He did not put forth that these were the same violations identified by the consultant or provide any other documentation to substantiate this claim.

rected its errors. The ancient maxims of *de minimis non curat lex* and *lex non curat de minimis* teach that the law cares not about trifles."

Thus, we do not have the syllogism "A + B → C," because B here is zero. In other words, by seeking to extend the Rule of Law in ADA cases by the use of this decision, the majority basically rules that any annoyed disabled person has the right to bring a suit to redress any violation discovered before the judgment is entered, even if the violation was totally unknown to and unencountered by the plaintiff. This is a result that flies in the face of the long standing precedent and should be barred by the constitutional requirements that the courts rule only in situations involving "cases or controversies." Therefore, as I would find that Skaff lacked standing at the time the complaint was filed, I would affirm the district court and deny attorney's fees. I dissent.