**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LES JANKEY,

*Plaintiff-Appellant,*

v.

POOP DECK; QUENTIN L. THELEN;
and THE POOP DECK INC., a
California corporation;

*Defendants-Appellees.*

No. 06-55957

D.C. No.
CV-04-09741-
RSWL

OPINION

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, District Judge, Presiding

Argued and Submitted
February 7, 2008—Pasadena, California

Filed August 12, 2008

Before: Susan P. Graber and Marsha S. Berzon,
Circuit Judges, and Claudia Wilken,* District Judge.

Opinion by Judge Graber

*The Honorable Claudia Wilken, United States District Judge for the
Northern District of California, sitting by designation.

10409

**COUNSEL**

Thomas E. Frankovich and Julia M. Adams, Thomas E. Frankovich, PLC, San Francisco, California, for the plaintiff-appellant.

E. Thomas Moroney, Redondo Beach, California, for the defendants-appellees.

**OPINION**

GRABER, Circuit Judge:

Plaintiff Les Jankey, an individual with a physical disability, sued Defendant Poop Deck, a beer and wine bar, and its owners, Defendants Quentin L. Thelen and The Poop Deck Inc., under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213. Plaintiff alleged that Defendants failed to remove architectural barriers at a place

of public accommodation, in violation of the ADA. The parties entered into a settlement agreement, which the district court approved, that required Defendants to remedy the problems. Plaintiff then sought attorney fees as a prevailing party under the ADA. The district court denied the request, ruling that "an award of attorney's fees and costs under the circumstances would be unjust." We reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff has a congenital deformity of his lower extremities, requiring that he use a wheelchair. Plaintiff alleges the following facts. On September 23, 2004, he visited the Mermaid, a restaurant in Hermosa Beach, California, to have a snack. After being unable to use the restroom at the Mermaid, he visited the Poop Deck, a beer and wine bar adjacent to the Mermaid, to have a drink and use the restroom. When he attempted to visit the Poop Deck, he encountered architectural barriers that denied him legally required access to the bar and restrooms. He "found that there was no lowered bar area from which to order a drink or to sit at the bar," that he "had difficulty wheeling through the narrow door of the restroom, as it only had a 27 inch clearance," and that, when he "attempted to transfer to and from the toilet without the use of a grab bar," he "stressed and strained himself in the transfer process."

On November 30, 2004, Plaintiff and the organization Disability Rights Enforcement, Education, Services: Helping You Help Others ("DREES") filed suit against Defendants in the Central District of California.[1] They alleged violations of the ADA, 42 U.S.C. §§ 12101-12213; the California Disabled Persons Act, Cal. Civ. Code §§ 54-55.2; California Health & Safety Code § 19955; the Unruh Civil Rights Act, Cal. Civ. Code § 51; and the California Unfair Competition Act, Cal.

---

[1]Plaintiff earlier had filed suit against the Mermaid. Defendant Thelen owns the building that houses both the Poop Deck and the Mermaid.

Bus. & Prof. Code §§ 17200-17210. Under the ADA, they sought injunctive relief to compel Defendants to make the Poop Deck accessible to individuals with disabilities, and they requested attorney fees and costs. On the California state law claims, they sought injunctive relief, attorney fees and costs, general and compensatory damages, punitive damages, statutory damages, special and consequential damages, and pre-judgment interest.

Neither Plaintiff personally nor his lawyers provided Defendants with any form of prelitigation notice, whether formal or informal. In other words, they did not notify Defendants in any way of the alleged accessibility violations before they filed suit.[2]

On July 25, 2005, the district court dismissed DREES for lack of standing and declined to exercise supplemental jurisdiction over Plaintiff's state law claims, ruling that the claims

---

[2]Instead, Plaintiff's counsel, the Frankovich Group, sent Defendants a letter with a copy of the complaint. The letter stated, in part:

> Once defense attorneys respond to or answer the Complaint, the vast majority, rather than attempt to settle the action, embark on a "billing" exercise. Simply put, the defense attorneys want to sufficiently "bill it" before they get realistic about the settlement. This may cost The Poop Deck Inc. a significant amount of money that could be better spent on the remedial work and settlement of the action. Keep in mind, the more work the defendant's attorneys force on us, the more work we must do. The more work we do is just that much more money The Poop Deck Inc. may be responsible for paying.

> We do not believe you have any bona fide defense to your continuing obligation to identify and remove architectural barriers pursuant to the ADA, which was passed over a decade ago (15 years).

See Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1063-64 (9th Cir. 2007) (per curiam) (describing a strikingly similar letter from the same lawyers as potentially "intimidating to unrepresented defendants [and], at best, a questionable exercise of professional judgment").

predominated over the federal ADA claim. Those rulings are not at issue on appeal.

On July 26, 2005, Defendants' counsel, E. Thomas Moroney, sent Plaintiff's counsel, Julia Adams at the Frankovich Group, a letter as a follow-up to a telephone conversation that had taken place one month earlier. The letter expressed Defendants' belief that they were not violating the ADA because the Poop Deck had accessible seating and because of the age and size of the facility.[3] The letter proposed a compromise:

> The Poop Deck and The Mermaid Restaurant are located side-by-side in a common building with a dividing wall. The property is owned by Mr. Thelen. The Mermaid is a defendant in a separate lawsuit brought by your client. The Poop Deck and Mermaid are willing to build a third unisex ADA compliant restroom in the Mermaid and have that restroom available to Poop Deck and Mermaid customers. The Poop Deck would post appropriate signage. The Poop Deck and Mermaid front The Strand, which is the beach bike, skate, and pedestrian walk way. A disabled customer from the Poop Deck can get to the Mermaid on The Strand without crossing streets or the Mermaid parking lot.
>
> The Poop Deck is also willing to address accessible seating by trying to lower and widen a portion of the shelf/rail that runs along the northern wall.
>
> I believe a shared facility is a reasonable and appropriate response. Given the age of the building and its common ownership it is unreasonable to

---

[3]For certain facilities, the ADA requires only that the owners "remove architectural barriers . . . *where such removal is readily achievable*." 42 U.S.C. § 12182(b)(2)(A)(iv) (emphasis added).

expect the parties to incur the expense of completely remodeling several existing restrooms, all of which are undersized and likely could not meet new construction ADA requirements in any event.

Last month I asked whether these modifications would satisfy your client's demands and allow us to settle the litigation. My clients would like to proceed with these modifications knowing that it will bring the lawsuits to an end. We do not want to be in a position of spending money on these modifications only to later learn that your client disapproves of them or demands something else. If your client does not respond or if we cannot reach agreement on the modifications, we will do what we believe is reasonably required under the circumstances and defend the litigation. But our first preference is to try and reach some agreement.

On August 23, 2005, Moroney sent Adams a second letter: "I would greatly appreciate some response to the proposal that has been on the table since June."

On October 7, 2005, Moroney again sent Adams a letter. The district court had appointed a mediator to the case, and Moroney proposed a mediation date. Moroney also wrote:

In June, I proposed a resolution that addressed the site issues as alleged in your complaint against the Poop Deck (as tenant) and Mr. Thelen (as landlord). I confirmed that proposal in writing. I followed-up with phone calls. To date, I have heard nothing from your office. My understanding is that the same is true with regard to the separate case alleging site issues specific to the Mermaid Restaurant (owned by Mr. Thelen), which is being defended by different counsel.

It may be utterly unnecessary for you to travel to Los Angeles for a mediation in this case, but we will not know that unless and until we get a response to, or at least a discussion about, the proposal on the table. If you have some fondness for downtown Los Angeles, then I suppose we will have the discussion during the mediation. But the trip and expense may be unnecessary.

On November 1, 2005, Moroney sent Adams an e-mail: "Any word on your end re the proposal on the table?" Three days later, Moroney followed up the e-mail with another letter:

As you know, we have a mediation scheduled for November 16. In June, I put a proposal on the table involving structural modifications to the Poop Deck and Mermaid that addressed your client's concerns. I have followed-up on that proposal with phone calls and letters to you asking for a response. To date, your client still has not responded.

I am concerned that the mediation will be quite unproductive if you do not provide a response to or at least engage in some dialogue about the proposed modifications before we meet on the 16th. If you take the position at the mediation that our existing proposal is inadequate in some way and have some other modifications in mind, we will not be able to agree or disagree with any counter proposal without first having input from an architect and contractor and an understanding of what the City, County, and Alcohol Beverage Control Board might say about different modifications. So if, at the mediation, you come in and say we want "x," the very best response we could give you is: "we have to run that by all sorts of other folks before we can give you a response." The mediation will end. Our clients and

> the mediator's time will have been wasted, and you will have flown to Los Angeles for nothing.

> We will have the same problem if you respond before the mediation but wait until the last minute before doing so. Please give us a response to the proposal by next Wednesday. Hopefully that will give us enough lead time to be able to productively discuss resolution on the 16th. Thank you.

The following Wednesday, November 8, 2005, Thomas E. Frankovich, the Frankovich Group's namesake, finally responded to Moroney's entreaties with a letter that he jointly wrote with Adams. The letter accepted Defendants' proposal of a single, unisex, ADA-accessible restroom located in the Mermaid Restaurant. Frankovich also requested that the restaurant add "signage of significant size . . . indicating the location and path of travel to the accessible restroom," "that an accessible area in the bar . . . be created," and that "a sign bearing the International Symbol of Accessibility . . . be posted adjacent to the front door," all of which Moroney had proposed in varying levels of detail. Frankovich then "ma[d]e a monetary demand contingent on an agreement being reached as to the requested injunctive relief." He stated:

> [I]f this case were to go to trial, defendants' potential exposure for statutory damages [under state law] alone is potentially $48,000.00.

> Of course, we are cognizant that settlement value is less than what could be expected at time of trial and have, therefore, taken this into consideration. Based upon the facts of this case and the methods by which damages may be calculated, plaintiff's demand to settle the compensatory damage claim for Les Jankey is $20,000. Additionally, our attorneys fees, costs and litigation expenses to date are $21,500 which includes expert fees in the sum of

$4,700. Thus, plaintiffs' global demand to settle all monetary claims would be $41,500.00.

Moroney called Adams to confirm the content of the letter, and he responded the next day with a letter that reconfirmed the modification plans to which Frankovich had agreed in writing and to which Adams had agreed over the telephone— namely, the shared restroom in the Mermaid and the addition of signage and an accessible seating area in the Poop Deck. The letter noted that Defendants had submitted the restroom construction plans to the city for approval months earlier and that the construction plans also included widening the entrance to the Poop Deck, an accessibility modification that Plaintiff had not requested. The letter concluded: "I believe these plans address the ADA concerns. If your client believes that these plans are inadequate or something else is required please advise me by the end of the week [November 11]. I will call you in response to your letter of November 8 early next week." Plaintiff did not object to the plans that week.

On November 14, 2005, two days before the scheduled mediation session, Moroney called Adams and told her that Defendants would settle all monetary claims for $2,500. In response, Frankovich faxed to Moroney a letter that rejected Defendants' counteroffer: "[P]laintiff's demand remains at $41,500. Plaintiff will be happy to entertain a reasonable counter-offer that takes both damages and attorneys' fees and costs into consideration." In addition, the letter objected, for the first time, to the fact that Poop Deck customers would have "to go outside and around the building to reach the [ADA-compliant] restroom." Frankovich stated that "[t]he shared restroom [with the Mermaid Restaurant] will only work if interior access is provided. If not, . . . two fully accessible restrooms are required."

Moroney immediately sent a letter to the court-appointed mediator requesting that the mediation session be postponed in light of Frankovich's letter. He wrote:

Mr. Frankovich just faxed me a letter . . . that places us exactly in the situation I expressed concerns about last week and one I have been trying to avoid since June. . . . I will refrain in this letter from characterizing Mr. Frankovich's last minute response as either a withdrawal of their prior agreement or a misunderstanding. I will, however, say that I called Ms. Adams after receiving her office's November 8 letter and before writing my confirming November 9 letter . . . to make sure we were on the same page.

In either case, it is certain that we will not be in any position to discuss opening walls between two separate businesses with different owners and different type ABC licenses on Wednesday. We will need input from an architect, contractor, Department of Alcohol Beverage Control and City of Hermosa Beach . . . .

Since the monetary award plaintiff seeks in the pending action is driven entirely by a possibility that he might recover attorneys' fees, I am frustrated that we will be participating in a mediation that cannot possibly resolve the matter. I am particularly disturbed that plaintiff's lawyers will be incurring and seeking recovery of fees for participating in a mediation rendered unproductive by their failure to communicate about these issues months ago, or at the very latest last week when we had experts on location to evaluate the issues.

I suggest we delay mediation until my clients and I can confirm one way or the other the feasibility, legality and expense of what Mr. Frankovich now proposes. . . . [I]t makes little sense for us to chat about them without having had an opportunity to evaluate the situation.

The mediator rescheduled the mediation for December 5, 2005.

On November 23, 2005, Moroney sent Adams and Frankovich a letter asking that, before the scheduled mediation, "our two contractors . . . have a discussion via phone, without lawyers, to see whether they can reach common ground on what is readily achievable with respect to the Poop Deck restroom issue." Adams and Frankovich declined Moroney's offer.

On December 2, 2005, Frankovich called Moroney to discuss a possible settlement to obviate the need for mediation. Although the record is unclear whether the parties met for mediation on December 5, 2005, the next day Moroney sent Adams and Frankovich a letter that memorialized their December 2 discussion:

> You again agreed to our proposal to construct a unisex accessible restroom in the Mermaid adjacent to the existing Mermaid restrooms with that restroom also being available to Poop Deck customers, and the path of travel being outside along the Strand and into the south facing entrance of the Mermaid (the main entrance). Appropriate signage will be posted.
>
> You had previously agreed that our proposal to increase accessible seating in the Poop Deck is adequate. As of Friday, no other access issues had been raised in our discussions or correspondence.

Although the parties appeared to agree on the necessary modifications, they did not have an agreement in writing, nor did they have an agreement on Plaintiff's claim for monetary damages. Consequently, on December 23, 2005, Moroney sent Adams and Frankovich another letter:

> So far as I know, we have agreed on modifications that adequately address the access issues at the Poop

Deck. The Poop Deck is proceeding with those mod-
ifications.

The court dismissed all plaintiff's damage claims.
With agreement on the access issues, the appropriate
response would be for you to dismiss the complaint,
or alternatively, confirm in a document we can pre-
sent to the court that the access issues have been
resolved. At that point, you can file a motion seeking
your attorneys' fees, which we will oppose.

If you proceed with the lawsuit seeking unneces-
sary or moot injunctive relief, we will file a motion
for summary judgment. Given our agreement on
access, such a motion should be unnecessary and one
of the options we will consider is a request that the
court order that plaintiff pay defendants' fees in hav-
ing to file the motion.

Please immediately dismiss the lawsuit or prepare
a document for filing with the court confirming that
the access issues have been resolved.

On December 29, 2005, Adams and Frankovich responded
by faxing Moroney a proposed settlement. After minor revi-
sions, the parties finally entered into a settlement agreement.
Under the terms of the settlement, Defendants agreed to the
following modifications:

a)  Post a sign bearing the International Symbol of
    Accessibility ("ISA") adjacent to the front door;

b)  Widen entrance doorway to a width of 32″ when
    the door is open to 90 degrees (The parties agree
    and acknowledge that this modification has been
    completed.);

c)  Lower and bevel the front entrance threshold to
    a maximum of ½ in. above the floor (The parties

agree and acknowledge that this modification has been completed.);

d) Provide an [ADA Accessibility Guidelines] compliant accessible seating area for service to persons with disabilities (The parties agree and acknowledge that this modification has been completed.); and

e) Provide a fully accessible restroom facility, per plans of architect Steve Jones, . . . located within the Mermaid Restaurant to be shared by patrons of both the Mermaid and the Poop Deck. Provide signage at each restroom door indicating location of accessible restroom.

The agreement required Defendants to complete all modifications by June 30, 2006. In addition, the agreement provided that "[t]he issues of attorneys' fees, costs and litigation expenses remain before the court" and that the district court retained jurisdiction to enforce the terms of the agreement.

On April 21, 2006, the district court accepted the settlement agreement:

Plaintiff LES JANKEY, by and through his counsel, and defendants QUENTIN L. THELEN and THE POOP DECK INC., by and through their counsel, stipulate to dismissal of this action in its entirety with prejudice pursuant to Fed. R. Civ. P. 41(a)(1). The issue of plaintiff's attorneys' fees, costs and litigation expenses shall be resolved by plaintiff filing a motion for reasonable attorneys' fees, costs and litigation expenses with the court. The parties further consent to and request that the Court retain jurisdiction over enforcement of the parties' Equitable Settlement Agreement and Release.

. . . .

> IT IS HEREBY ORDERED that matter is dis-
> missed with prejudice pursuant to Fed. R. Civ. P.
> 41(a)(1). IT IS FURTHER ORDERED that the
> Court shall retain jurisdiction for the purpose of
> enforcing the parties' Settlement Agreement and
> General Release should such enforcement be neces-
> sary.

(Citation omitted.)

On May 5, 2006, Plaintiff filed a Notice of Motion and Motion for Award of Reasonable Attorneys' Fees, Including Litigation Expenses and Costs. In a memorandum in support of his motion, Plaintiff argued that he was entitled to attorney fees as a prevailing party because the settlement agreement "legally obligates defendants to provide fully accessible accommodations and/or facilities at The Poop Deck" and, "[a]s a term of the parties' settlement is for the federal court to retain full jurisdiction over enforcement of the agreement, the settlement agreement has the necessary judicial *imprimatur*."

Defendants opposed Plaintiff's fee request. They argued that the district court should exercise its discretion to deny Plaintiff's request because he did not provide prelitigation notice and because Defendants proposed a prompt resolution of the access issues. Alternatively, Defendants argued that Plaintiff was not a prevailing party under Supreme Court and Ninth Circuit precedent and that Plaintiff's request for fees was unreasonable because Defendants proposed the final modifications six months before Plaintiff accepted them.

The district court denied Plaintiff's Motion for Award of Reasonable Attorneys' Fees, Including Litigation Expenses and Costs. The court ruled:

In A.D.A. cases the Court may decline to award attorney's fees and costs to the prevailing plaintiff when such an award would be unjust.

Here plaintiff has failed to provide prelitigation notice and has unreasonably protracted litigation by waiting nearly five months to reply to defendants' proposal remedy of the A.D.A. violation. Mr. Frankovich and his firm's abusive litigation tactics have been well documented. The purpose of the A.D.A. is to ensure accessibility to public accommodations for disabled individuals, not to enrich attorneys.

Because an award of attorney's fees and costs under the circumstances would be unjust, the plaintiff's motion is denied.

Plaintiff timely appealed the district court's denial of his motion for attorney fees.

## STANDARDS OF REVIEW

We review de novo the legal standard applied by a district court to rule on a request for attorney fees. *Thomas v. City of Tacoma*, 410 F.3d 644, 647 (9th Cir. 2005). We also review de novo questions of law underlying that decision. *Id.* We review for clear error questions of fact resolved by the district court. *Id.* If the district court applied the correct legal standard and if its findings of fact were not clearly erroneous, then we review for abuse of discretion the district court's decision on the award of attorney fees. *Id.*

## DISCUSSION

A. *Plaintiff was a prevailing party.*

As a threshold matter, Defendants argue that we should affirm the denial of fees because Plaintiff was not a "prevailing party" under the ADA. We disagree.

**[1]** In a case pursued under the ADA, a court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 12205. "[F]or a litigant to be a 'prevailing party' for the purpose of awarding attorneys' fees, he must meet two criteria: he must achieve a material alteration of the legal relationship of the parties, and that alteration must be judicially sanctioned." *P.N. v. Seattle Sch. Dist. No. 1*, 474 F.3d 1165, 1172 (9th Cir. 2007) (internal quotation marks omitted). In other words, the alteration must have a "judicial *imprimatur*." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).

**[2]** Here, the district court dismissed Plaintiff's case pursuant to a settlement agreement between the parties under which the court retained jurisdiction to enforce the settlement. Defendants argue that those actions by the district court do not constitute a sufficient judicial *imprimatur*. That argument is foreclosed by *Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832 (9th Cir. 2007) (per curiam). There, we held that a "settlement agreement and the district court's order dismissing the case[, which] provided that the district court would retain jurisdiction to enforce the agreement," satisfied the requirements of *Buckhannon* to render the plaintiff a prevailing party under the ADA. *Id.* at 844 & n.12. The settlement agreement in this case both authorized judicial enforcement of its terms and expressly referred resolution of the issue of attorney fees to the district court.

Alternatively, Defendants argue that the settlement agreement did not meaningfully alter the legal relationship between the parties because, by the time the parties signed the settlement agreement, the only modifications that Defendants had not completed were construction of the accessible restroom in the Mermaid Restaurant and signage about that restroom in the Poop Deck. Defendants reason that Defendant Thelen already was bound to construct the restroom by a settlement agreement in Plaintiff's action against the Mermaid Restaurant and, therefore, that the settlement agreement in this case

obligated Defendants to do nothing that they had not previously completed or were obligated to complete.

[3] Defendants are mistaken. A settlement agreement meaningfully alters the legal relationship between parties if it allows one party to require the other party "to do something it otherwise would not be required to do." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000). Defendants' argument, on its face, acknowledges that the Mermaid settlement agreement did not bind Defendants Poop Deck and The Poop Deck Inc. to construct an accessible restroom. Plaintiff had the authority to require them to do so—and to do so by June 30, 2006—under, and only because of, the settlement agreement at issue here. In addition, the instant settlement agreement, and only that agreement, bound Defendants to install the appropriate signage in the Poop Deck informing patrons about the accessible restroom located in the Mermaid Restaurant and to inform Frankovich when all of the agreed modifications were completed. Thus, Plaintiff was the prevailing party on his ADA claim.

B. *The district court erred in denying Plaintiff attorney fees.*

[4] "The Supreme Court has explained that[,] in civil rights cases, the district court's discretion is limited." *Fischer*, 214 F.3d at 1119 n.2. A prevailing plaintiff under the ADA " 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).

"Congress passed the ADA in 1990 to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citation and internal quotation marks omitted). And Congress enacted the fee-shifting provisions of civil rights statutes "to ensure effec-

tive access to the judicial process for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (internal quotation marks omitted). "If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (per curiam). Consequently, recovery is "the rule rather than the exception." *Herrington v. County of Sonoma*, 883 F.2d 739, 743 (9th Cir. 1989) (order) (internal quotation marks omitted).

The district court applied the correct legal standard to Plaintiff's request for attorney fees under the ADA, asking whether an award of fees to Plaintiff would be unjust. However, Plaintiff argues that the district court erred by considering the lack of prelitigation notice in making that decision.

In *Skaff*, 506 F.3d at 844, we reviewed a district court's denial of an award of attorney fees where the court "did not explicitly indicate the significance of the fact that [the plaintiff] did not give pre-suit notice . . . [but] apparently viewed pre-suit notice *as a prerequisite* to recovering attorneys' fees under the ADA." (Emphasis added.) We "h[e]ld that the ADA contains no such notice requirement, and . . . decline[d] to imply one." *Id.* We reasoned:

> The text of the ADA contains no pre-suit notice requirement. If Congress believes it is preferable as a matter of policy to require plaintiffs to give notice to defendants before filing an ADA suit, it is free to amend the Act. . . . Unless and until Congress sees fit to engraft a notice requirement onto the ADA, we apply the ADA as written without a pre-filing notice requirement.

*Id.* at 844-45. We vacated the district court's order denying an award of attorney fees and remanded for "the district court [to] consider the merits of [the plaintiff]'s motion." *Id.* at 846.

**[5]** Unlike in *Skaff*, the district court here did not purport to *require* prelitigation notice. Instead, this case presents a question of law left open by *Skaff*—whether the ADA allows a district court to consider lack of prelitigation notice as a *factor* in its special-circumstances analysis in determining whether a request for attorney fees under the ADA would be unjust.

**[6]** Denying attorney fees altogether as "unjust" because of a lack of prelitigation notice would constitute, in essence, a sanction for failing to provide notice. But as we held in *Skaff*, the ADA does not require prelitigation notice. Litigants and their lawyers should not be penalized for failing to meet a purported technical requirement that does not exist. And failing to provide prelitigation notice cannot, by itself, be considered harrassing or improper because the ADA permits the conduct. Nor does it matter whether the district court considers the lack of notice in conjunction with other adverse considerations. If the other conduct is sufficient to render a fee award unjust, then the lack of prelitigation notice need not be considered; if the other conduct is not sufficient, then the lack of prelitigation notice would be, in the end, what justifies denying fees, in contravention of *Skaff*.

**[7]** We therefore hold that a district court may not use a lack of prelitigation notice as a factor in determining whether to deny as unjust a request for attorney fees under the ADA. Here, the district court erred when it used Plaintiff's failure to provide prelitigation notice as a factor to deny him attorney fees as a prevailing plaintiff.

**[8]** The district court also denied fees because it found that Plaintiff unreasonably *protracted* the litigation, but unreasonably prolonging a legitimate suit is a reason to reduce fees, not to deny them altogether. That successful litigation took longer than necessary does not render "unjust" an award of fees in some amount. *See Hensley*, 461 U.S. at 434 ("The district court . . . should exclude from th[e] initial fee calculation

hours that were not reasonably expended." (internal quotation marks omitted)). In addition, here, the court below stated that the "abusive litigation tactics [of Plaintiff's counsel] have been well documented." To the extent that the court was referring to Plaintiff's lack of prelitigation notice and his protraction of the litigation, we already have explained that neither reason justifies an outright denial of fees. To the extent that the court was referring to Plaintiff's counsel's numerous *other* lawsuits in the Central District of California, those cases are not a part of the record here.

**[9]** Consequently, the district court proffered no legitimate factor that would constitute a special circumstance to render an award of attorney fees unjust. We therefore reverse the district court's denial of Plaintiff's request for fees and remand for a calculation of reasonable attorney fees.

C.   *The district court has discretion to* reduce *Plaintiff's fee award*.

On remand,

> the district court has discretion in determining the amount of [the] fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters. It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award.

*Hensley*, 461 U.S. at 437.

**[10]** "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. But "[t]he district court . . . should exclude from th[e] initial fee calculation hours that were not reason-

ably expended." *Id.* at 434 (internal quotation marks omitted). In other words, the court should exclude "hours that [we]re excessive, redundant, or otherwise unnecessary." *Id.* Consequently, although the district court erred in considering Plaintiff's protraction of the litigation in deciding whether to *deny* fees, the court may consider whether Plaintiff protracted the litigation in deciding whether to *reduce* fees.

**[11]** In addition, we clarify that a district court may, in its protraction analysis, consider whether a plaintiff provided prelitigation notice. Prelitigation notice is not required, and failing to provide notice is not unjust, but district courts have discretion to consider all kinds of non-required conduct in deciding whether litigants have protracted litigation. For example, there is no legal requirement that a lawyer respond to telephone calls, but it would not unduly penalize a lawyer to consider such conduct in finding that the lawyer unreasonably protracted litigation. Similarly, while a district court may not reduce fees on the premise that the suit should not have been filed at all before providing notice, it does have discretion to determine whether failing to provide prelitigation notice resulted in unnecessary fees during the course of the litigation—that is, fees that would have been lower had there been notice before filing. *Accord Ass'n of Disabled Ams. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1360 (11th Cir. 2006) (per curiam).

Of course, a determination that the lack of prelitigation notice resulted in unnecessary fees during the litigation must be explained, and the excessive fees identified. *See Hensley*, 461 U.S. at 437 ("[T]he district court [should] provide a concise but clear explanation of its reasons for the fee award."). As we recently noted, in reviewing a fee reduction for duplicative work,

> if the court believes the overall award is too high, it needs to say so and explain why, rather than making summary cuts in various components of the award.

> While we accord deference to the district court's explanation of why a requested fee is excessive, we can only do so if the district court provides an explanation that we can meaningfully review. Findings of duplicative work should not become a shortcut for reducing an award without identifying just why the requested fee was excessive and by how much. As the reduction passes well beyond the safety zone of a haircut, which plaintiff's counsel seems to have given herself already, the district court's justification for the cuts must be weightier and more specific.

*Moreno v. City of Sacramento*, No. 06-15021, 2008 WL 2875300, at *4 (9th Cir. July 28, 2008). Similarly, the lack of prelitigation notice "should not become a shortcut for reducing an award," *id.* at *4, and is a permissible consideration only if it is specifically connected to a reason why the lawsuit, once filed, would have been resolved more cheaply.

Here, it is evident on the current record that the lack of prelitigation notice did not result in the incurring of any unnecessary fees during the litigation. Defendant did not initiate settlement discussions until seven months after the lawsuit was filed, and there is no reason to believe Defendant would have responded any more quickly once the complaint was filed had there been notice first. Nor is there a showing that the lack of notice caused Plaintiff's attorney unnecessarily to incur any fees once the case was filed. Where, as here, the lack of prelitigation notice neither caused nor contributed to the accumulation of unnecessary fees once the case was filed, it cannot be the basis for reducing a fee award. *See Hensley*, 461 U.S. at 434 ("The district court . . . should exclude from th[e] initial fee calculation hours that were not reasonably expended." (internal quotation marks omitted)).

The record does support a possible different basis for reducing the fee award: the district court's finding that Plaintiff's conduct after the lawsuit was filed unreasonably pro-

tracted the litigation, a finding that Plaintiff challenges on appeal. We "must accept the district court's factual findings absent a definite and firm conviction that a mistake has been committed." *Alcala v. Woodford*, 334 F.3d 862, 868 (9th Cir. 2003) (internal quotation marks omitted). No mistake occurred here.

In the questionable letter that Frankovich sent Defendants with the complaint, he expressed: "We do not want to see The Poop Deck Inc. waste its money on needless litigation. We want access agreed to now, not later." And yet, after Moroney proposed access modifications in June 2005—modifications in some respects more expansive than those requested by Plaintiff—the uncontroverted record demonstrates that Frankovich and Adams waited more than four months to respond to the proposal.

In his initial proposal, Moroney explained why feedback on the modifications was both important and time-sensitive and expressed his clients' motivation to settle. But Moroney's July 26, 2005, letter went unanswered. His August 23, 2005, letter went unanswered. His October 7, 2005, letter went unanswered, even though Moroney expressed a desire and willingness to settle the access issues in advance of the scheduled mediation session. His November 1, 2005, e-mail went unanswered. His November 4, 2005, letter finally received a response, after emphasizing the importance of receiving feedback before the mediation, so that the effort would be productive.

On November 8, 2005, Frankovich and Adams responded to, and accepted, Moroney's proposed access modifications. But two days before the scheduled mediation session, Frankovich withdrew his acceptance because Poop Deck customers would have to go outside to reach the accessible restroom located in the Mermaid Restaurant—a fact that had been a part of Moroney's proposal from the very beginning. Frankovich's withdrawal forced Moroney to reschedule the

mediation, as Moroney's letters had stated would be necessary if Frankovich objected to the proposed modifications on the eve of mediation. Moroney once again struck a conciliatory and practical tone, requesting that the parties' contractors "have a discussion via phone, without lawyers, to see whether they can reach common ground on what is readily achievable to the Poop Deck restroom issue"—a request that Frankovich denied.

On December 2, 2005, Frankovich again agreed to Moroney's proposed modifications but would not put anything in writing to that effect. Only after Moroney raised the specter of a motion for summary judgment and attorney fees for requiring the filing of such a motion did Frankovich and Adams propose a settlement agreement. The agreement consisted of five access modifications, three of which Defendants already had completed, and all five of which Defendants had proposed six months earlier.

**[12]** In summary, Plaintiff requested access, and Defendants proposed modifications to provide it. After four months of silence by Plaintiff, and two months in which Plaintiff accepted and then unaccepted the proposal, Plaintiff finally proposed a settlement agreement that essentially restated the modifications that Defendants had placed on the table six months earlier. In the face of those facts, the district court did not clearly err in determining that Plaintiff unreasonably protracted the litigation in this case. Plaintiff argues that the delay was reasonable because he "was attempting to resolve not only this underlying action, but also another action in which [Defendant] Quentin Thelen was named as a defendant, *Jankey v. Mermaid Restaurant*." But Plaintiff does not explain why those efforts resulted in four months of silence, particularly because Defendants' proposed restroom would have resolved both cases simultaneously—it was located in the Mermaid Restaurant—nor does he create a "definite and firm conviction that a mistake has been committed." *Alcala*, 334 F.3d at 868.

**[13]** We leave to the district court's discretion—applying the standards enunciated in *Hensley* and *Moreno*, as discussed above—whether, and to what extent, Plaintiff's protraction of the litigation should affect his award of attorney fees.

REVERSED and REMANDED.