**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KLAMATH SISKIYOU WILDLANDS
CENTER; CASCADIA WILDLANDS
PROJECT; UMPQUA WATERSHEDS,
        *Plaintiffs-Appellees,*

        v.

UNITED STATES BUREAU OF LAND
MANAGEMENT,
        *Defendant-Appellant.*

No. 08-35463

D.C. No.
1:05-CV-03094-CL

OPINION

Appeal from the United States District Court
for the District of Oregon
Owen M. Panner, District Judge, Presiding

Argued and Submitted
June 1, 2009—Portland, Oregon

Filed December 15, 2009

Before: Diarmuid F. O'Scannlain, Ferdinand F. Fernandez,
and Raymond C. Fisher, Circuit Judges.

16545

## COUNSEL

Robert Lundman, United States Department of Justice, Washington, D.C., argued the cause for appellant and submitted briefs. Brian Perron, Office of the Solicitor, Department of the Interior, Washington, D.C.; and Ronald J. Tenpas, Assistant Attorney General, Beverly F. Li, and Andrews C. Mergen, United States Department of Justice, Washington, D.C., were also on the briefs.

Erin Madden, Cascadia Law P.C., Portland, Oregon, argued the cause for appellees and filed a brief. Marianne Dugan, Attorney, Eugene, Oregon, was also on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether environmental organizations are prevailing parties within the meaning of the Equal Access to Justice Act when, before judgment, the Bureau of Land Management withdraws its challenged decision to conduct a timber sale.

I

Plaintiffs Klamath Siskiyou Wildlands Center, Cascadia Wildlands Project, and Umpqua Watersheds ("Klamath") sued the Bureau of Land Management of the United States Department of the Interior ("BLM"), alleging that a planned timber sale in the Willy Slide area of the Medford District, among other decisions, violated the National Environmental Protection Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and the Forest Lands Policy and Management Act ("FLPMA"), 43 U.S.C. § 1701 *et seq.* Klamath sought "a preliminary injunction; a declaration that the challenged decision violated cer-

tain laws; a permanent injunction against the project until the BLM complied with those laws; and an award of costs and attorneys fees.”

Klamath filed its complaint in October of 2005. The BLM’s own guidelines barred proceeding with the Willy Slide timber sale between October 15, 2005, and May 15, 2006, although a BLM official could waive this restriction. While cross-motions for summary judgment were pending before a magistrate judge, the parties stipulated that the BLM would stay authorization of the sale until the magistrate judge made a recommendation on the cross-motions and any objections had been resolved. The stay lasted only until May 15, 2006, at which point Klamath would have the option of moving for a preliminary injunction. The magistrate judge adopted this stipulation in January of 2006.

Meanwhile, in a different lawsuit, the same plaintiffs had challenged, on similar grounds, two other timber sales that the BLM had proposed. On November 6, 2006, we decided in favor of Klamath in the appeal of that case. *See Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549 (9th Cir. 2006). At the time, the cross-motions for summary judgment were still pending in this case before the magistrate judge. The day after *Boody* came down, the magistrate judge filed Findings and Recommendations (“F&R”). The magistrate judge concluded that *Boody* was “directly on point” and that Klamath was “entitled to summary judgment” on some of its claims.

That same day (November 7, 2006), the BLM on its own “vacated [its] earlier rulings and granted [Klamath’s] protest of the Willy Slide timber sale.” In a letter to Klamath, the BLM noted the objections to its previous decision, as well as “recent case law pertaining to similar activities and NEPA analysis.” The BLM stated that, in light of those two considerations, it would wait to award the Willy Slide sale “until such time that supplemental analysis and decision-making has been completed as appropriate.” It is unclear whether the BLM did

this before or after it found out about the magistrate judge's F&R.

The BLM then moved to dismiss this case without prejudice for lack of jurisdiction on the ground that it was either moot or unripe, objecting to the F&R on the same basis. The district court granted the motion to dismiss on both grounds. It concluded that the action was no longer ripe because Klamath's "claims [were] contingent upon future events; the BLM may or may not proceed with [the Willy Slide timber sale]. . . . If the BLM decides to offer the timber for sale again, [Klamath] will be able to challenge the sale and any under lying [sic] environmental documents." Alternatively, the action was moot because the court "[could not] grant [Klamath] any effective relief as the [Willy Slide timber sale] decision has been withdrawn and the [Annual Species Reviews[1]] have been held invalid [in *Boody*]."

Klamath then moved for attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Over the BLM's objection, the district court granted the motion. The BLM timely appeals.

## II

In this country litigants ordinarily must pay their own attorney's fees, contrary to the rule that prevails in England. This "American rule" can change, but usually only by private agreement or statute. And indeed Congress has passed many statutes to allow parties who sue the United States to recover attorney's fees in certain circumstances, but only if they were "prevailing parties" in the lawsuit. *See Buckhannon Bd. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 600 (2001).

---

[1]These were decisions of the agency on which the timber sales at issue in this case and in *Boody* relied.

**[1]** One such statute is the Equal Access to Justice Act.[2] The term "prevailing party," in this as in other statutes, is a term of art that courts must interpret consistently throughout the United States Code. *Id.* at 603; *Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002) (applying the *Buckhannon* definition of "prevailing party" to the EAJA); *see also Sole v. Wyner*, 127 S. Ct. 2188, 2194 (2007) (citing cases interpreting "prevailing party" language in various federal statutes). It means "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Citizens for Better Forestry v. U.S. Forest Serv.*, No. 07-16077, slip op. at 6841, 6847 (9th Cir. June 9, 2009) (quoting *Buckhannon*, 532 U.S. at 603 (quoting Black's Law Dictionary 1145 (7th ed. 1999))).

**[2]** This definition requires the party to have achieved "a material alteration in the legal relationship of the parties" that is "judicially sanctioned." *Buckhannon*, 532 U.S. at 604-05 (internal quotation marks omitted); *Carbonell v. INS*, 429 F.3d 894, 898 (9th Cir. 2005) (internal quotation marks omitted). The material alteration and the judicial sanction are two separate requirements. *See Carbonell*, 429 F.3d at 899.

**[3]** The material alteration in the legal relationship of the parties must be relief that the would-be prevailing party sought, for "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Hewitt v. Helms*, 482 U.S. 755, 760 (1987). The form in which the relief comes is less important than that it be the relief the plaintiff sued to get. Thus, an order remanding a case to an administrative agency for further proceedings passes the *Buckhannon* test, where such a remand is what the plaintiff or petitioner sought. *Li v.*

---

[2]The statute reads, in relevant part: "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . ." 28 U.S.C. § 2412(d)(1)(A).

*Keisler*, 505 F.3d 913, 917-18 (9th Cir. 2007) (explaining that the prevailing parties had sought either to reopen removal proceedings or to obtain a remand for review of a specific legal claim). Even a voluntary stipulation, adopted by the district court, to stay deportation proceedings earns an immigrant petitioning for review "prevailing party" status, so long as the stay was the "primar[y] concern" of the case and secured the petitioner "much of the relief he [had] sought." *Carbonell*, 429 F.3d at 899-900.

Whatever form it takes, the "material alteration" must consist of actual *relief*, not merely a determination of legal merit. "[A] favorable determination on a legal issue, even if it might have put the handwriting on the wall, is not enough by itself." *Better Forestry*, No. 07-16077, slip op. at 6851. *Poland v. Chertoff*, 494 F.3d 1174 (9th Cir. 2007), furnishes a vivid example of this rule. We upheld a post-trial judgment in favor of the plaintiff on one claim but reversed on another. *Id.* at 1179-86. The damages award was based on the claim with respect to which we reversed the judgment, so we vacated the award and remanded for the plaintiff to seek a remedy. *Id.* at 1186. We also vacated the district court's award of attorney's fees because the plaintiff had not won "any relief on the merits of his claim[ ]," even though he had "established his claim" as a matter of law and "on remand [could] seek redress for injuries suffered." *Id.* at 1187. Thus, the court must formally indicate that the plaintiff is entitled to some *actual relief* —legal or equitable relief[3]—in order to establish a material alteration. *Id.* A moral victory, in other words, is not enough. *See Hewitt*, 482 U.S. at 761.

*Buckhannon* also emphasized the necessity of a "judicial imprimatur." 532 U.S. at 605. The lodestar of this requirement is that "a plaintiff is [not] a 'prevailing party' if it [only] achieves the desired result because the lawsuit brought about

---

[3]Certainly, if the plaintiff sought a declaratory judgment, such a judgment would also suffice.

a voluntary change in the defendant's conduct." *Id.* at 601 (rejecting the so-called "catalyst theory"). Thus, *Buckhannon* concluded that the repeal of a statute the plaintiff had challenged does not make the plaintiff prevailing. Even though the repeal "perhaps accomplish[ed] what the plaintiff sought to achieve," it merely represents the "defendant's voluntary change in conduct," which lacks a judicial sanction or imprimatur. *Id.* at 605. In short, the judicial sanction must be an *enforceable entitlement* to relief. It must "allow[ ] one party to require the other party to do something it otherwise would not be required to do." *Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) (internal quotation marks omitted). To receive what one sought is not enough to prevail: the court must require one's opponent to give it.

[4] All together, this case law establishes that the sine qua non of prevailing party status is an enforceable, judicially sanctioned award of much of the relief the plaintiff sought. *See Better Forestry*, No. 07-16077, slip op. at 6847 ("[A] party must have a judgment or something similar *formally* delivered in its favor to be considered 'prevailing.' "); *Carbonell*, 429 F.3d at 900.

### III

[5] Prevailing party status must always rest on a judicial sanction—typically an order of some kind—that materially alters the parties' legal relationship. Therefore, the first question we must ask is, "what is the judicial order or sanction?" Here, the district court relied on three judicial acts to conclude that Klamath had prevailed: (1) the stipulated order staying the Willy Slide timber sale until May 15, 2006; (2) the magistrate judge's F&R; and (3) the district court's own dismissal of the case for lack of subject-matter jurisdiction on the basis of the BLM's voluntary withdrawal of the sale. We take each in turn.

A

The stipulated order is certainly judicially enforceable: it barred the BLM from authorizing the Willy Slide timber sale until May 15, 2006. Klamath relies on *Carbonell* for the proposition that an enforceable stipulation can support prevailing party status. But *Carbonell* grants no special status to stipulations. What mattered there was that the stay saved an otherwise imminently removable immigrant from deportation. This was "much of the relief he sought." 429 F.3d at 900. Without the stay, the Immigration and Naturalization Service would have deported the immigrant in the ordinary course of affairs. *Id.* at 899.

**[6]** By contrast, the stipulation here lacked both of these characteristics. It was not the relief, not even the preliminary injunction, for which Klamath sued. Judging by its complaint, Klamath did not file suit because it was afraid the BLM would exercise its discretion to proceed with the Willy Slide timber sale, despite the seasonal restrictions, in January instead of in May. Klamath sought a declaration that the sale was illegal and an injunction against it ever happening without the court's permission. The stipulation was not even a stand-in for a preliminary injunction, for Klamath reserved the right to move for one on May 15, 2006.

Furthermore, all the stipulation did here was to foreclose to the BLM what seems to have been *an exception to the ordinary course*, namely that agency's discretion to waive the seasonal restriction on a timber sale. It was not like a preliminary injunction, which plaintiffs usually seek to prevent the defendant from doing something it would almost certainly have done otherwise. Although Klamath insists that there is no evidence that the seasonal restrictions normally apply, it is logical to presume that they would. *Cf. Gifford Pinchot Task Force v. United States Fish & Wildlife Serv.*, 378 F.3d 1059, 1071 (9th Cir. 2004). Thus, *Carbonell* is inapposite because the stipulation did *not* award Klamath "much of the relief [it]

sought" by preventing an imminent agency action. 429 F.3d at 900.

**[7]** Although the stipulation altered the parties' legal relationship by preventing the BLM from doing something it otherwise was free to do, such alteration was not *material* in the context of the relief Klamath sought in this lawsuit. We therefore conclude that the stipulation is not itself sufficient to confer prevailing party status.

B

**[8]** The second judicial act the district court pointed to was the magistrate judge's F&R. A magistrate judge's recommendations on motions for summary judgment are just that: recommendations. They have no binding legal effect on the parties until the district court adopts them. *See* CHARLES ALAN WRIGHT ET AL., 12 FED. PRAC. & PROC. CIV. 2d § 3070.1 (2009) ("It is fundamental that [a magistrate judge's] recommendations do not become an order of the court until the district judge takes some action.").[4] An Article III judge may accept or reject them if the parties object, and he must review de novo the portions of the recommendations to which the parties object. *See* 28 U.S.C. § 636(b)(1)(C); *Dawson v. Marshall*, 561 F.3d 930, 932-33 (9th Cir. 2009). Here, the BLM objected. Regardless of what the BLM objected to, its objection means that the F&R had no legal effect until the district court reviewed it. Thus, the F&R is not a court order that Klamath can enforce by seeking contempt or any other judicial remedy.

---

[4]We note that there may be situations in which the decisions of the magistrate judge are indeed enforceable on their own. Examples might include the specific proceedings a magistrate judge is permitted to determine, *see* 28 U.S.C. § 636(a) and (b)(1)(A), or when the parties consent to the full authority of the magistrate judge to order entry of judgment, *see id.* § 636(c). We do not address such situations in this opinion, for they are not before us.

## C

Finally, we consider the district court's dismissal order.

[9] The case was dismissed for lack of jurisdiction on the ground that Klamath's claims had become either unripe or moot. Both defects indicate the absence of a constitutional claim or controversy because a court cannot grant any relief. *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (noting that the ripeness requirement "protect[s] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties" (internal quotation marks omitted)); *Tur v. YouTube, Inc.*, 562 F.3d 1212, 1213 (9th Cir. 2009) (per curiam) ("The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted.") (internal quotation marks omitted). As a matter of law and logic, the district court cannot have awarded Klamath any relief if it dismissed the case because it could not grant relief. And that is exactly what a dismissal on mootness or ripeness grounds means.

[10] Klamath argues that the district court's dismissal order was "premised on the court's finding that the BLM was required to undertake certain actions before issuing a new timber sale." Indeed, the court itself explained that its ruling was based "upon the BLM's commitment to undertake (or not to take) certain specific actions." *Better Forestry*, however, forecloses any argument that this finding confers prevailing party status on Klamath, because it was not accompanied by any ruling that Klamath was entitled to relief. *See* 567 F.3d at 1132-33. Thus, the district court's order could not itself provide enforceable relief against the BLM.[5]

---

[5]To be sure, the district court's finding may well have become the law of the case, and the BLM may have been judicially estopped from proceeding with the sale without conducting further analyses, having advised the district court it could not do so. *See Hamilton v. State Farm Fire &*

**[11]** The district court's dismissal order judicially sanctions no change in the parties' relationship because it does not and could not "allow[ ] one party to require the other party to do something it otherwise would not be required to do." *Jankey*, 537 F.3d at 1130 (internal quotation omitted). Therefore, it is also insufficient to confer prevailing party status on Klamath.

IV

Undeterred, Klamath makes a novel argument. It reaches outside the confines of this lawsuit and claims our own decision in *Boody* as the source of its prevailing party status in this case.

**[12]** Klamath's theory is that *Boody* drove the BLM to flee the field of battle because the agency knew it was "faced with imminent defeat." In *Boody*, we invalidated the same Annual Species Review decisions that underlay the Willy Slide timber sale. 468 F.3d at 563. We also held that two other timber sales were unlawful because they relied on those decisions. *Id.* Thus, one might suspect that, had BLM not beat its hasty retreat, Klamath would soon have prevailed on the strength of *Boody*.

**[13]** Even if Klamath is right, however, that *Boody* assured it of victory, that is not enough to establish prevailing party status here. As we have recently reaffirmed, "a favorable determination on a legal issue, even if it might have put the

_____

*Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) ("Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."). However, the district court's finding would not be judicially enforceable against the BLM unless Klamath initiated further proceedings, whether a separate lawsuit or motion to set aside the judgment of dismissal, and successfully invoked one of these legal doctrines to establish its entitlement to "some form of judicially-sanctioned relief." *Better Forestry*, 567 F.3d at 1132.

handwriting on the wall, is not enough by itself. A favorable judicial statement of law . . . cannot substitute for a form of judicial relief." *Better Forestry*, No 07-16077, slip op. at 6851 (internal quotation marks omitted).

The district court was under the impression that Justice Scalia's concurrence in *Buckhannon* (which Justice Thomas joined) changed the analysis. The court believed that Justices Scalia and Thomas, like the four dissenters who supported the catalyst theory, endorsed the view that a plaintiff is prevailing if "the very merit of [a plaintiff's] claim led the defendant to capitulate before judgment." 532 U.S. at 616 (Scalia, J., concurring). Counting these six votes, the district court considered this view to be the law. Thus, it concluded that Klamath prevailed because the BLM capitulated after a legal decision, albeit in another case, revealed its legal position on the merits to be doomed.

We are unpersuaded that Justice Scalia's concurrence makes any difference. As a threshold matter, we note that the vote-counting the district court performed was out of place. There are certainly cases when there is no majority opinion and the plurality takes a legal position more far-reaching than the position of a concurring justice or justices. In such cases the narrowest view that commands a majority of justices is the law. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (internal quotation marks omitted)). *Buckhannon*, however, is not such a case. Justice Scalia explicitly wrote his concurrence to amplify, not limit, the opinion of the Court, which was a majority, not a plurality, opinion. *See Buckhannon*, 532 U.S. at 610 ("I join the opinion of the Court in its entirety, and write to respond at greater length to the contentions of the dissent.").

Furthermore, when read in context Justice Scalia's "very merit" remark does not endorse the district court's approach. The difference "between the dissent's outcome and the Court's," according to Justice Scalia, is this: "If the former sometimes rewards the plaintiff with a phony claim . . . , the latter sometimes denies fees to the plaintiff with a solid case whose adversary slinks away on the eve of judgment." *Id.* at 618. This case seems squarely within the second category: the BLM slinked away before the district court entered a judgment.

**[14]** Finally, it does not alter the equation that Klamath and BLM were also the parties in *Boody*. Klamath argues that, if the BLM were to reinstate the Willy Slide timber sale, then Klamath could simply argue for collateral estoppel on the basis of *Boody* against the BLM and secure relief with little effort. Maybe, but it does not matter. Collateral estoppel would be available to Klamath even if it had never initiated this action. Its availability here is purely a function of the *Boody* litigation (for which Klamath did receive fees), and betokens no material alteration in the legal relationship of the parties vis-à-vis the Willy Slide timber sale. Collateral estoppel is not a form of relief; it is the consequence in one case of relief ordered in a prior case.[6]

In summary, we conclude that Klamath is not a prevailing party in this case because neither the stipulated order, the magistrate judge's F&R, nor the binding ruling in *Boody*, a separate case, amounts to a "material alteration of the legal relationship of the parties" that is "judicially sanctioned," as

---

[6]Our judicial system operates through discrete legal cases. Parties must sue for particular relief, not to generate a good legal opinion they can cite in another case. To secure a decision for its preclusive effect is not the kind of relief that makes a cognizable controversy. *Cf. Tur*, 562 F.3d at 1213-14 (holding that a litigant cannot save an appeal from being moot "on the grounds that resolving it might have a collateral estoppel or res judicata effect on pending litigation in another jurisdiction").

required in *Buckhannon*. 532 U.S. at 604-05 (internal quotation marks omitted).

V

**[15]** For the foregoing reasons, the district court's grant of attorney's fees and costs to Klamath is REVERSED and VACATED. The case is REMANDED for further proceedings consistent with this opinion.